1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ERIC K.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. C20-1546-SKV

ORDER REVERSING THE
COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of his application for a Period of Disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1973, has at least a high school education, and previously worked as a metal window screen assembler, fruit packer, and janitor. AR 32-33. Plaintiff was last gainfully employed on August 10, 2015. AR 23.

On January 11, 2016, Plaintiff applied for benefits, alleging disability beginning August 10, 2015.  AR 20.  Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing.  After the ALJ conducted a hearing on March 15, 2018, the ALJ issued a decision finding Plaintiff not disabled.  AR 176-97.  On June 28, 2019, the Appeals Council remanded the case.  AR 198-201.  After the ALJ conducted another hearing on December 17, 2019, the ALJ issued a decision finding Plaintiff not disabled.  AR 17-40.  The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. AR 1-6.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since August 10, 2015.

**Step two**:  Plaintiff has the following severe impairments: degenerative disc disease of lumbar spine; left carpal tunnel syndrome, status post release; status post broken left arm; depression; and anxiety.

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity**:  Plaintiff can perform light work subject to a series of further limitations.

**Step four**:  Plaintiff cannot perform past relevant work.

**Step five**:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 23-34.

//

//

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 2

1

## LEGAL STANDARDS

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

19

## DISCUSSION

20

21

22

Plaintiff argues the ALJ erred by misevaluating the medical evidence, by discounting his testimony, and by crafting a deficient RFC. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

23

1      **A.  The ALJ Erred in Evaluating the Medical Evidence**

2          Because Plaintiff filed his applications before March 27, 2017, the ALJ was required to

3   generally give a treating doctor's opinion greater weight than an examining doctor's opinion, and

4   an examining doctor's opinion greater weight than a non-examining doctor's opinion.  *Garrison*

5   *v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  An ALJ may only reject the contradicted opinion

6   of a treating or examining doctor by giving "specific and legitimate" reasons.  *Revels v.*

7   *Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).

8              *1.  Kimberly Wheeler, Ph.D. and Phyllis Sanchez, Ph.D.*

9          Dr. Wheeler examined Plaintiff three times.  First, on December 18, 2015, Dr. Wheeler

10  opined, among other things, Plaintiff had marked limitations understanding, remembering, and

11  persisting in tasks by following detailed instructions, performing activities within a schedule,

12  maintaining regular attendance, being punctual within customary tolerances without special

13  supervision, setting realistic goals, and planning independently; and moderate limitations

14  adapting to changes in a routine work setting, asking simple questions or requesting assistance,

15  communicating and performing effectively in a work setting, and completing a normal workday

16  and workweek without interruptions from psychologically based symptoms.  AR 453.  Next, on

17  January 12, 2017, Dr. Wheeler opined, among other things, Plaintiff had marked limitations and

18  completing a normal workday and workweek without interruptions from psychologically based

19  symptoms, setting realistic goals, and planning independently; and moderate limitations

20  understanding, remembering, and persisting in tasks by following detailed instructions,

21  performing activities within a schedule, maintaining regular attendance, being punctual within

22  customary tolerances without special supervision, performing routine tasks without special

23  supervision, adapting to changes in a routine work setting, asking simple questions or requesting

1    assistance, communicating and performing effectively in a work setting, and maintaining

2    appropriate behavior in a work setting.  AR 484.  On January 21, 2017, Dr. Sanchez concurred

3    with this assessment.  AR 488.  Finally, on November 27, 2019, Dr. Wheeler opined, among

4    other things, Plaintiff had a marked limitation completing a normal workday and workweek

5    without interruptions from psychologically based symptoms; and moderate limitations

6    performing activities within a schedule, maintaining regular attendance, being punctual within

7    customary tolerances without special supervision, adapting to changes in a routine work setting,

8    and asking simple questions or requesting assistance.  AR 782.

9         As to Dr. Wheeler's first opinion, the ALJ first discounted it as "inconsistent with the

10    doctor's essentially unremarkable mental status examination."  AR 30.  The ALJ pointed to

11    Plaintiff's "normal thought process and content, orientation, perception, memory, fund of

12    knowledge, concentration, abstract thought, and insight and judgment."  AR 31. However,

13    Plaintiff's performance on the mental status examination – conducted in a closed and sterile

14    setting with a psychiatric professional – is not reasonably inconsistent with Dr. Wheeler's opined

15    limitations concerning, among other things, Plaintiff's ability to tolerate workplace stressors,

16    behave appropriately in a workplace setting, and remain on task, as well as Plaintiff's

17    absenteeism.  The ALJ also discounted the opinion as not "giving a reliable longitudinal opinion

18    regarding the claimant's functioning (i.e., limitations less than twelve months)."  AR 31.  On this

19    record, however, the durational bar is not a valid reason to reject Dr. Wheeler's opinion.  The

20    durational bar intends to preclude short-term impairments.  The rationale behind the durational

21    bar would be applicable if, in fact, the severity of Plaintiff's impairments was limited to only six

22    months.  Here, however, the record shows Plaintiff's mental impairments far exceeded six

23    months, as evidenced, in part, by Dr. Wheeler's subsequent examinations in 2017 and 2019.  The

1  ALJ's discounting of Dr. Wheeler's opinion based upon the durational bar is therefore not

2  supported by substantial evidence. *See, e.g.*, *Dukes v. Astrue*, 2012 WL 4792924, at *6 (W.D.

3  Wash. Sept. 12, 2012), *report and recommendation adopted,* 2012 WL 4792970 (W.D. Wash.

4  Oct. 9, 2012) (ALJ erred in rejecting opinion of doctor who estimated limitation would last 6

5  months where record showed Plaintiff's limitations exceeded 6 months).  The ALJ accordingly

6  erred by discounting Dr. Wheeler's first opinion.

7       As to Dr. Wheeler's second opinion, the ALJ first discounted it as "inconsistent with the

8  doctor's essentially unremarkable mental status examination."  AR 31.  As described above, this

9  reasoning is erroneous.  The ALJ also discounted the opinion as "inconsistent with treatment

10 providers repeatedly noting he was negative for depressive symptoms, and treating counselors

11 consistently noting he had stable symptom level."  AR 31 (cleaned up).  The ALJ's finding is

12 contrary to well-settled precedent that, in the mental health context, "[c]ycles of improvement

13 and debilitating symptoms are a common occurrence, and in such circumstances it is error for an

14 ALJ to pick out a few isolated instances of improvement over a period of months or years and to

15 treat them as a basis for concluding a claimant is capable of working."  *Garrison*, 759 at 1017

16 ("Reports of 'improvement' in the context of mental health issues must be interpreted with an

17 understanding of the patient's overall well-being and the nature of her symptoms. They must also

18 be interpreted with an awareness that improved functioning while being treated and while

19 limiting environmental stressors does not always mean that a claimant can function effectively in

20 a workplace.") (cleaned up); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That

21 a person who suffers from severe panic attacks, anxiety, and depression makes some

22 improvement does not mean that the person's impairments no longer seriously affect her ability

23 to function in a workplace.").  Substantial evidence does not support the finding that Plaintiff's

ORDER REVERSING THE COMMISSIONER'S
DECISION - 6

psychological impairments were "stable."  Rather, the record reflects Plaintiff presented over the

years with psychological symptoms of varying intensity.  *See, e.g.*, AR 549-50 (January 2017

indicating Plaintiff's depressed mood lasts "for a minute or for a day," and that Plaintiff feels "on

edge every day"); AR 527 (June 2017 PHQ-9 questionnaire note reflecting moderately severe

depression); AR 798 (June 2018 treatment note describing Plaintiff's anxiety and panic attacks);

AR 621 (August 2019 treatment note indicating Plaintiff presented with "severe depression and

anxiety").  Further, Plaintiff testified he has panic attacks at least "a couple times per week".  AR

97.  That Plaintiff presented panic-free, or "stable," at certain times is thus not inconsistent with

Plaintiff experiencing waxing-and-waning mental health symptoms at other times.  The ALJ

accordingly erred by discounting Dr. Wheeler's second opinion.  Because the ALJ erroneously

discounted Dr. Wheeler's second opinion, he necessarily erred by discounting Dr. Sanchez's

opinion as consistent with Dr. Wheeler's.[3]

As to Dr. Wheeler's third opinion, the ALJ discounted the opinion for the same reasons

he discounted the first opinion.  As discussed above, on this record, these reasons were

erroneous.  The ALJ accordingly erred by discounted Dr. Wheeler's third opinion.

### 2.  Mark Heilbrunn, M.D.

Dr. Heilbrunn examined Plaintiff on March 17, 2016.  *See* AR 456-62.  The ALJ credited

Dr. Heilbrunn's opined exertional limits, but rejected the balance of the opinion.  The ALJ

offered several reasons to discount the opinion, at least one of which was valid.  Among other

reasons, the ALJ discounted the opinion as inconsistent with "treatment notes showing the

claimant repeatedly rating his pain level 0 to 2 out of 10."  AR 31.  Plaintiff does not challenge

---

[3] The ALJ also discounted Dr. Sanchez's opinion on the ground she "did not examine the claimant."  AR 32.  The is not a valid reason to discount a doctor's opinion, and is inconsistent with the weight the ALJ afforded to other non-examining doctors.

this stated reasoning, which is a valid reason to discount the doctor's opinion.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).  Because the ALJ gave at least one valid reason for discounting Dr. Heilbrunn's opinion, the Court need not address the balance of the ALJ's stated reasons for discounting the opinion.  Any inclusion of erroneous reasons was inconsequential and therefore harmless.  *See Molina*, 674 F.3d at 1115.

### 3.  Other Medical Evidence

Plaintiff lists, seriatim, findings and notations of numerous medical providers.  Dkt. 20 at 7-9.  He states the findings of these sources support his testimony. *Id.* at 11. The Court rejects Plaintiff's conclusory statements as grounds to reverse the ALJ.  Plaintiff bears the burden of showing the ALJ harmfully erred.  *See Molina*, 674 F.3d at 1111.  Plaintiff's conclusory statements are insufficient to meet this burden.  *See Indep. Towers of Washington v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court. …We require contentions to be accompanied by reasons."); *see generally Carmickle v. Commissioner*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address issues not argued with any specificity); *see also James M. v. Comm'r of Soc. Sec.*, 2020 WL 3605630, at *2 (W.D. Wash. July 2, 2020) ("[I]t is not enough merely to present an argument in the skimpiest way (i.e., listing the evidence), and leave the Court to do counsel's work—framing the argument, and putting flesh on its bones through a discussion of the applicable law and facts.").

### 4.  Greg Saue, M.D.

The ALJ partially credited the opinion of Dr. Saue, who reviewed Plaintiff's medical records on July 15, 2016.  Plaintiff summarizes the ALJ's treatment of the non-examiner's

opinion, and argues "Dr. Saue understated [Plaintiff's] limitations, and his opinion is inconsistent with Dr. Heilbrunn's opinion and [Plaintiff's] testimony." Dkt. 20 at 10. However, an ALJ generally may accept any medical opinion and need not even give reasons. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ must provide reasons for rejecting a medical opinion, but not for accepting and interpreting one). Further, as noted above, conclusory arguments made without elaboration, explanation, or citation to supportive evidence are insufficient to establish the ALJ harmfully erred and are accordingly rejected.

**B. The ALJ Erred by Discounting Plaintiff's Testimony**

The ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms he alleged and therefore was required to provide "specific, clear, and convincing" reasons supported by substantial evidence to discount his testimony. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

The ALJ indicated Plaintiff testified, among other things, "he did not have a full time job due to anxiety, depression, panic attacks, and bad back and knees," "his depression and anxiety caused him to stay in bed," "he had crying spells," "he had 'a lot' of anxiety," and "had 2 to 5 panic attacks per week." AR 26-27.

The ALJ first discounted Plaintiff's testimony as inconsistent with the medical evidence, providing a recitation of the medical record and discussing Plaintiff's medication history. AR 21-23. However, because the ALJ erred by discounting the opinions of Dr. Wheeler and Dr. Sanchez, as discussed above, and the medical evidence must therefore be reevaluated, this is not a valid ground to discount Plaintiff's testimony. Further, with respect to finding Plaintiff's mental impairments improved with medication, the ALJ mischaracterized the record. Plaintiff testified, in the context of taking Klonoplin, "I still have some panic attacks though. I mean it's

not, it's not perfect."  AR 98.  By contrast, the ALJ indicated "[a]t the recent hearing, [Plaintiff] testified Klonopin worked well for his panic."  AR 30.  The ALJ thus erred by inaccurately portraying the record.  *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (reversing ALJ's decision where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record")

The ALJ next discounted Plaintiff's testimony as inconsistent with his "conservative mental health treatment," pointing in particular to "no history of psychiatric hospitalization." AR 30.  This is not a legitimate inconsistency: the record reflects no doctor opined Plaintiff would require in-patient psychiatric treatment and the ALJ is not qualified to make such an interpretation.  *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (recognizing that an ALJ is "not qualified as a medical expert").  The ALJ accordingly erred by discounting Plaintiff's testimony on this ground.

Finally, the ALJ discounted Plaintiff's testimony as inconsistent with his activities.  The ALJ indicated Plaintiff is "able to handle personal care, take care of his dogs, run errands, attend appointments, and drive occasionally," "occasionally walk[s] to the store," "watch[es] television, listen[s] to the radio, play[s] on his phone, and play[s] with the animals," and "ke[eps] occasional contact with friends, mostly online."  AR 30.  Substantial evidence does not support this ground. The minimal activities the ALJ cites do not undercut Plaintiff's claims concerning his mental impairments.  *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *Reddick*, 157

F.3d at, 722 ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits). Further, Plaintiff's minimal activities do not "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603). The ALJ accordingly erred by discounting Plaintiff's testimony on this ground.

### C.  Scope of Remand

This case must be remanded because the ALJ harmfully misevaluated the medical evidence and Plaintiff's testimony. Plaintiff contends the Court should remand for an immediate award of benefits. Such a remand should be granted only in a rare case and this is not such a case. The medical evidence and Plaintiff's testimony must be reweighed, and this is a function the Court cannot perform in the first instance on appeal. Further proceedings are thus not only helpful but necessary. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (noting a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances'") (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

Because the ALJ misevaluated the medical evidence and Plaintiff's testimony, the ALJ will necessarily need to determine, on remand, whether the RFC needs to be adjusted. For this reason, the Court need not reach Plaintiff's assignment of error regarding the RFC. Further, the Court need not reach Plaintiff's argument, raised for the first time on reply, concerning the constitutionality of the structure of the Social Security Administration. *See PDK Labs. Inc. v.*

*DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) ("[I]f it is not necessary to decide more, it is necessary not to decide more.") (Roberts, J., concurring in part and concurring in the judgment).

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should reevaluate the opinions of Dr. Wheeler and Dr. Sanchez, reassess Plaintiff's testimony, develop the record and redetermine the RFC as needed, and proceed to the remaining steps as appropriate.

Dated this 14th day of September, 2021.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER'S
DECISION - 12